IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAYNE HENDERSON, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. DKC-24-3356 |
| WARDEN, | * | |
| Respondent. | * | |

***

# MEMORANDUM OPINION

Petitioner Wayne Henderson, who is self-represented and incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Mr. Henderson alleges that the Bureau of Prisons ("BOP") has improperly disallowed his accrued First Step Act ("FSA") credit days which has kept him from entering pre-release custody. ECF No. 1 at 9-11. Respondent filed a Motion to Dismiss or, in the alternative, for Summary Judgment, asserting that the Petition should be dismissed because Mr. Henderson has not exhausted administrative remedies.[1] ECF No. 10. Mr. Henderson was advised of his right to file a response in opposition to Respondent's motion and of the consequences of failing to do so, but has filed nothing further in this case. ECF No. 12. For the reasons that follow, the Petition must be dismissed without prejudice.

**A.     Background**

Mr. Henderson states that on July 25, 2024, his Case Manager requested that he sign a Supervision Release Plan because soon he would be placed into pre-release custody. ECF No. 1 at 9, ¶ 4.1. On August 2, 2024, Mr. Henderson received an Institutional Referral for Community

---

[1] Alternatively, Respondent seeks an extension of time to ensure Mr. Henderson's Federal time credits are calculated properly and are up to date. ECF No. 10 at 10-11.

Correction Center ("CCC") placement form which indicated that the recommended date for his placement into pre-release custody was October 29, 2024. *Id*. at ¶¶ 4.2, 4.3.

The placement form showed a conditional FSA release date of September 28, 2027, and provided a breakdown of how Mr. Henderson's credits applied toward his placement into lower security facilities. Mr. Henderson had 365 Federal Time Credits ("FTCs") that applied toward sentence reduction; 610 FTCs applicable toward Residential Reentry Center or Home Confinement custody; and 365 days of recommended Second Chance Act credits that would allow him a 975-day halfway house recommendation. ECF No. 1 at 9, ¶ 4.4. The CCC form also indicated that there were no extenuating circumstances that would preclude Mr. Henderson from the placement into pre-release custody and that, while he did not have a GED certificate, he had "accrued enough hours per policy to sign out of the GED program." *Id*. at ¶¶ 4.5, 4.6.

In addition to the CCC placement form he signed on August 2, 2024, Mr. Henderson also signed a Community Based Program and Home Confinement Agreement. *Id*. at ¶ 4.7.

On August 26, 2024, Mr. Henderson was summoned to the Unit Manager's office where he was told he would be denied pre-release custody and his accrued FSA credit days would be disallowed because he had not completed the GED program. *Id*. at ¶ 4.8. Mr. Henderson immediately re-enrolled in the GED program and initiated a grievance through the Administrative Remedy Process. *Id*. at ¶ 4.9.

Mr. Henderson submitted an "informal resolution" explaining that, because he had completed close to 1000 hours of GED instruction while he was at FCI-Fort Dix, he had exceeded the 240 instructional hours needed under BOP Program Statement 5350.28, entitling him to withdraw from the program without disciplinary action being taken against him. ECF No. 1 at 10, ¶ 4.10. Mr. Henderson's Case Manager responded to the complaint on October 9, 2024, explaining

that because Mr. Henderson's GED status was "un sat," the FSA credits would not be applied toward his placement into pre-release custody. *Id*. at ¶ 4.11. In Mr. Henderson's view, the response is a contradiction to what he was told when he signed the aforementioned agreements. *Id*.

On October 7, 2024, Mr. Henderson received an updated "FSA Time Credit Assessment Form" that also indicated all of his FSA Credit days would be disallowed. ECF No. 1 at 10, ¶ 4.12, ECF No. 1-6 at 2 ("Disallowed Pgm Days: 753").

On October 14, 2024, Mr. Henderson filed a BP-9 with the Warden requesting reinstatement of the FSA credits so that he could be placed in pre-release custody. ECF No. 1 at 10, ¶ 4.13, ECF No. 1-7 at 2 -3. The Warden's response indicates that as of October 15, 2024, Mr. Henderson had 653 FTCs disallowed because of his "GED UNSAT status." ECF No. 1-8 at 2. The Warden then explained that, under Program Statement 5410.01, inmates who are eligible to earn FTCs but are unable or unwilling to participate in the programs as evidenced by "opting out" may not have their FTCs applied toward placement in pre-release custody. *Id*. He further stated that Mr. Henderson's risk and needs assessment showed an education need and that his decision not to participate in the GED program from January 1, 2023, through October 15, 2024, resulted in disallowance of the 653 program days. *Id*. The Warden reassured Mr. Henderson that because he had re-enrolled in the GED program on August 30, 2024, he would resume "accruing days toward the earning of FTCs" once he completes "enough hours to earn GED SAT status." *Id*. The response included instructions on how to appeal the response to the Regional Director. *Id*.

Mr. Henderson filed an appeal to the Regional Office on November 4, 2024, raising the claim that the Warden's statement that he decided not to participate in the GED program from January 1, 2023, through October 15, 2024 was factually incorrect. ECF No. 1 at 10, ¶ 4.15. Mr. Henderson claimed that he could not have made such a decision because he was never told by staff

3

at FCI-Cumberland to sign up for the GED program when he arrived. *Id*. Once he was advised of the need to participate in the GED program, Mr. Henderson immediately re-enrolled in the GED program. *Id*. Mr. Henderson claims the administrative remedy process has operated as a dead end. *Id*. at 11, ¶ 4.16.

Mr. Henderson states that he is 56 years old and has served 14 years of his sentence. ECF No. 1 at 12, ¶ 5.2. From 2012 through 2016, while he was confined at the Fort Dix facility, he completed 940 instructional hours in the GED program. *Id*. Despite those efforts, Mr. Henderson's numerous attempts to pass the GED test were not successful and he became discouraged and withdrew from the program in 2017. *Id*. at ¶ 5.3. In Mr. Henderson's view, his completion of more than 240 instructional hours complies with BOP Program Statement 1350.28 which "states that inmates must complete 'at least 240 instructional hours or achieve a GED credential or High School Diploma, whichever comes first.'" *Id*. at 5.4. Mr. Henderson further asserts that he withdrew from the program one-year before the First Step Act was passed by Congress and he is now being penalized for an action that occurred before the Act was signed into law. ECF No. 1 at ¶¶ 5.6, 5.7.

Mr. Henderson then accrued 975 additional credit days after the First Step Act was passed in 2018 through October of 2024. ECF No. 1 at 13, ¶ 5.8. He claims he was never told he would lose his FSA credits because of his voluntary withdrawal from the GED program in 2017. *Id*. Mr. Henderson points to 28 C.F.R. Parts 523 and 541 which state that:

> From a fairness perspective, the Bureau also acknowledges that an inmate who has been consistently participating in programming, such as working to obtain his or her GED while the FSA was in effect . . . should be rewarded for that effort.

4

*Id*. at ¶ 5.10.  He further states that under 18 U.S.C. § 3682(e)(2), "any reduction that includes the loss of time credits <u>shall</u> require a written notice to the prisoner." *Id*. at ¶ 5.12.  Mr. Henderson states he has never received written notice of his credits being disallowed.  *Id*. at ¶ 5.13.

Mr. Henderson believes that he has met the requirements of Program Statement 1350.28 by exceeding the 240 instructional hours required to withdraw voluntarily from the GED program without incurring an infraction.  ECF No. 1 at 13, ¶ 5.14.  He argues that the administrative record contains no rationale for the BOP's decision to deny him the benefit of his accrued credits making it an arbitrary and capricious decision that violates the Administrative Procedures Act.  *Id*. at ¶ 5.15, citing 5 U.S.C. § 706 (2)(A).  He claims that BOP staff did not consider any relevant factors, nor did they articulate a rational basis when they decided to remove his FSA credits which means his classification as "un sat" may be challenged as an abuse of administrative agency discretion under *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (June 28, 2024).  *Id*. at 14, ¶¶ 5.17, 5.18.  As relief, Mr. Henderson asks this court to order the BOP to remove the "un sat" designation from his program record, place him into RRC/HC immediately, and to expedite a decision on this case.  *Id*. at ¶¶ 5.20 -5.23.

While this case was pending, Mr. Henderson was granted clemency by President Biden.  Specifically, President Bident commuted "the total sentence of imprisonment [Mr. Henderson] is now serving to expire on **July 16, 2025**."  ECF No. 10-1 at 25 (emphasis in original), *see also id*. at 30 ("Wayne Henderson 61617-066").

**B.    Standard of Review**

Although this court's power to entertain a petition for writ of habeas corpus under 28 U.S.C. § 2241 is broad, it "has long been established that the district court's discretion to entertain habeas petitions and exercise the power of the writ is not boundless." *Timms v. Johns*, 627 F.3d 525, 530

5

(4th Cir. 2010).  "[P]rudential concerns, such as comity and the orderly administration of criminal justice, may require a federal court to forgo the exercise of its habeas corpus power."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  Such is the case where there is a failure to exhaust administrative remedies.

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies before seeking habeas review under § 2241.  *See, e.g., Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms v. Johns*, 627 F.3d 525, 530–33 (4th Cir. 2010) (same); *McClung v. Shearin*, 90 F. App'x. 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *Miller v. Clark*, 958 F.2d 368, 1992 WL 48031, at *1 (4th Cir. 1992) (unpublished table opinion) ("Federal prisoners who wish to challenge the length of their confinement must first exhaust administrative remedies."); *Henderson v. Warden, Edgefield Satellite Prison Camp*, No. 2:09-cv-01599-RBH, 2009 WL 3317149, at *2 (D.S.C. Oct. 14, 2009) ("It is well settled that a federal prisoner is required to exhaust his administrative remedies within the Bureau of Prisons before filing an action pursuant to § 2241.").

Mr. Henderson is therefore required to exhaust administrative remedies prior to filing his petition in this court.  The BOP Administrative Remedy Procedure provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based.  *See* 28 C.F.R. § 542.14(a).  If an inmate is not satisfied with the Warden's response to his formal written complaint, he may appeal to the Regional Director within 20 calendar days of the Warden's response.  *See* 28 C.F.R. § 542.15(a).  If the inmate still is not satisfied, he may appeal the Regional

Director's response to the Office of General Counsel, Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Exhaustion is "normally desirable" in order to allow for the development of a factual record and to permit the agency an opportunity to exercise its discretion or apply its expertise, *McKart v. United States*, 395 U.S. 185, 193–94 (1969), as well as to allow the agency to correct its mistakes, which conserves judicial resources at the same time, *McCarthy*, 503 U.S. at 145–46.

**C.     Discussion**

Respondent contends that Mr. Henderson failed to exhaust administrative remedies because, when he did not receive a timely response from the Mid-Atlantic Regional Office regarding his appeal, he did not appeal to the BOP's Central Office within forty days of the date he should have received the response. ECF No. 10 at 7, citing 28 C.F.R § 542.18. Mr. Henderson does not dispute that he failed to exhaust administrative remedies; rather he claims that the process operates as a dead-end because all of the prior responses he received were conclusory. ECF No. 1 at 7. Mr. Henderson's abandonment of the administrative process due to his frustration with the responses he received is not the unavailability contemplated by the Supreme Court in *Ross v. Blake*, 578 U.S. 632 (2016). While the Court reiterated that "[a] prisoner need not exhaust remedies if they are not 'available,'" *id*. at 636, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008). An administrative remedy is available if it

7

is "'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure.  *Id.* at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play."  578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 644.

To the extent that Mr. Henderson relies on the first "dead end" scenario, the Court provided an example of such a scenario as involving "a prison handbook [that] directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions."  *Id*. at 643.  Here, Mr. Henderson's grievances were processed and considered.  Thus, he has not provided a viable excuse for failing to exhaust administrative remedies prior to filing his petition with this court.  Accordingly, the Petition will be dismissed without prejudice by a separate order which follows.

<u>April 23, 2025</u>                                               <u>            /s/                       </u>
Date                                                                    DEBORAH K. CHASANOW
                                                                              United States District Judge